IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BILLY LOFTON                                                                                              PLAINTIFF

vs.                                        Case No. 4:20-cv-141-JM

GLAZER'S BEER AND BEVERAGE
OF ARKANSAS                                                                                              DEFENDANT

ORDER

Plaintiff Billy Lofton, a former employee of Defendant Glazer's Beer and Beverage of Arkansas ("Glazer's"), brings this action for age and race discrimination pursuant to the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964. Glazer's has moved for summary judgment on all claims. (Doc. No. 7). For the reasons stated below, the motion for summary judgment is granted.

Background Facts

Lofton, who is African American, worked as a district sales manager for malt beverage distributor Glazer's and its predecessors[1] beginning in 2006 until he was terminated in December of 2018 at the age of 65. He was initially employed by Harbor Distributing Company ("Harbor") as a Group Sales Manager. Glazer's Distributors of Arkansas acquired Harbor no later than 2014.[2] Lofton was hired from Harbor to continue his job in the same role with the title of District Sales Manager (DSM). On July 1, 2016, Glazer's Distributor formed Glazer's Beer and Beverage of Arkansas, LLC (Glazer's) to operate its malt beverage distribution business.

Lofton's supervisor was Rick Simpson. Simpson reported to Will Herrin, President of

---

[1] Lofton was originally hired by Harbor Distributing Company which was later acquired by Glazer's Distributor of Arkansas, Inc. which then formed Glazer's Beer and Beverage of Arkansas in 2016 to handle the malt beverage distribution side of its business.
[2] The parties dispute the date, with Defendant putting forth evidence that the acquisition was effective December 31, 2009. This is not a material fact.

Sales and Operations.  Both Simpson and Herrin are white.  Of the five DSMs at Glazer's North Little Rock facility, Lofton was the only one who was not white.  He was also the oldest DSM there.

Glazer's contracts with breweries to sell their beer through Glazer's accounts at stores and restaurants.  Lofton was one of four DSMs responsible for accounts at grocery and convenience stores, called off-premise accounts.  Glazer's keeps the beer at its warehouse then ships it to the accounts.  DSMs like Lofton are responsible for all accounts located on their assigned routes, including making sure that the beer their stores were not out of date ("OOD").  Sales representatives are assigned to a DSM and report directly to them.  DSMs are responsible for training their sales representatives on how to audit the products delivered at each account and are ultimately responsible for the condition of the product at their stores.

Simpson regularly audited the DSMs to confirm that the accounts were in good order.  On multiple occasions, Lofton was cautioned after an audit turned up OOD beer at his stores.  In August of 2014, Lofton received verbal counseling when OOD beer was found on the shelf at one of his accounts.  He also received a verbal warning in June 2015 when 3.5 cases of beer out of 35 cases were found to be OOD.  On February 12, 2016, Lofton was given a written warning because 21 cases of beer were found to be OOD at one of his stores.  On August 1, 2016, Lofton was again written up for OOD beer.

In 2018, Glazer's received two customer complaints about Lofton's performance.   When Simpson went to audit Food Giant on August 11, 2018, the store manager reported several complaints to Simpson including that he had not seen Lofton in two months and had called him several times and left messages with no return call. Lofton does not dispute that the manager complained to Simpson, but he does deny that the store manager tried to call him for three days

in a row. Herrin wanted to follow up on Lofton's performance and so conducted an audit of Markham Liquor on October 17, 2018. Herrin stated the following about the audit:

> I audited Markham Liquor and talked to the store manager, who was incensed by Lofton's lack of attention to his store. For example, the store manager reported that Lofton failed to ensure proper quantities of beer were ordered on high volume days. In fact, the store manager had requested additional quantities be ordered for a Razorback game which was being played in Little Rock, only blocks away from the store, and Lofton refused the request. Additionally, store conditions on the day of my visit were truly terrible. Many products could not be shopped in the cooler because they were placed on the incorrect shelf. The cooler planogram was not being followed. Many brand families were placed in the cooler in different locations apart from one another which is a basic merchandising failure. The cooler back stock area was completely disorganized. This abysmal performance reflected terribly on GBB.

(Doc. 7-2., p. 104). Herrin met with Lofton and Simpson on November 1, 2018 to discuss Lofton's performance. At the conclusion of the meeting Herrin had not determined whether to fire Lofton or to place him on a performance improvement plan ("PIP"). The following day Lofton was placed on a PIP. (Doc. 7-2, p. 90-92). The PIP identifies multiple problems with Lofton's performance, including: the Quality Audits he submitted were incomplete or contained factual errors, the salesperson "work-with" evaluations he gave to his sales representatives were carelessly completed and did not meet standards, he was not utilizing the technology systems as required to better manage his sales team (having only logged in once in the last 90 days), and the receipt of two significant customer complaints.

On November 16, 2018, following his placement on a PIP, Lofton and other DSMs participated in a training session on technology systems Glazer's had started using in 2016. Lofton's participation was mandated by his PIP. These systems, called iDig and Karma, were designed to track fresh product and perform account audits. Mark SoRelle, Director of Business Intelligence and Analytics for Glazer's, had scheduled the follow-up training after noticing that several DSMs, including Lofton, were rarely logging-on to the systems. According to the

declaration of SoRelle:

> During the November 16, 2018 training, Mr. Lofton failed to log-on to his computer despite the fact that I specifically asked all DSMs to inform me if they had difficulty accessing the systems. This was particularly troubling since a large part of the training required the DSMs to follow along on their own computer while I taught them how to properly prepare reports and other documents that are essential to their day-to-day jobs. At no time during this training did Mr. Lofton speak up, ask any questions, or raise his hand; there was zero interaction at all.

(Doc. No. 7-2, p. 115). Lofton does not dispute that he failed to log-on, but he says he was looking at another DSM's computer during the training. (Doc. No. 2-7, p. 44). SoRelle stated that Lofton's usage of the technology systems did not improve after the training. SoRelle further reported that Lofton failed the subsequent test of the basic material outlined in the training and "did not even *attempt* to answer a majority of the questions." *Id.* at p. 116. He was the only DSM that failed the test. During his deposition, Lofton admitted he could have used more training on the systems and that he was not proficient. (Doc. No. 7-2, p. 36, 38). He also said he had some computer trouble with his laptop during the test.

On December 28, 2018, Lofton met with Herrin and Simpson to evaluate his progress on the PIP. Unsatisfied with Lofton's progress, Herrin made the decision to terminate his employment on that date.

Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.

*Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex.,* at 327.

The Eighth Circuit has clarified that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Fercello v. City of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).

Race

Plaintiff claims that he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights of 1964. Plaintiff does not argue that he has any direct evidence of race discrimination. In the absence of direct evidence, the Court applies the familiar burden-shifting framework set out in McDonnell-Douglas.[3] To establish a prima facie case for race discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination "(for example, similarly situated employees outside the protected class were treated differently)." *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016) (citations omitted).

As an African American who was fired from his job, Lofton has established the first and third elements of a prima facie case. As to the third element, it is undisputed that Lofton was

---

[3] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

5

given multiple warnings, verbal and then written, that he was not meeting his job expectations. At the time of his termination, he was sixty days into a PIP and his performance was found to be below expectations on three of the four objectives that had been set. (Doc. 7-2, p. 102).

Lofton also failed to establish that the circumstances of his termination give rise to an inference of discrimination. Viewing the admissible evidence most favorably to plaintiff, he established the following in his deposition: most of his accounts were in predominately African-American communities (though he was not the only DSM who was assigned to work stores in predominately African-American communities); he believes that Glazer's identified some accounts as "African American" and that it was common practice in the industry; and on more than one occasion he asked Simpson for help covering his routes if two sales reps were off work and Simpson did not respond, but the other DSMs were not required to cover two routes in one day.

Lofton also states that he was treated differently than three white DSMs: Jon Scheland, Chip Ruhlman, and James Mark Smith. With respect to Scheland, Lofton states that beginning in 2018, Lofton had requested to have permanent sales reps hired to replace the two trainees, but he felt like his requests for permanent sales reps were put on the back burner whereas Scheland did have a permanent position filled during that time. Also, Scheland was allowed to conduct interviews for his sales rep position, and Lofton was never asked to do so.

As to Ruhlman and Smith, Lofton states that both were disciplined for having OOD beer on their routes, but neither one was terminated like he was. Also, Ruhlman had some issues with one of his accounts and management sent someone to the store to smooth things over while when Lofton had issues with the Markham store manager he was forced to go to the store and apologize. Lofton also said he understood that Rhulman had been kicked out of some accounts

and that, to his knowledge, he had not been disciplined. He offers no evidence as to what issues Rhulman might have had or why he would have been kicked out of some accounts.

The evidence relied on by Lofton does not establish an inference of discrimination in the matter of his termination. Lofton testified that he had essentially the same route throughout his employment which began in 2006, with some tweaks but no major changes. Even if Glazer's classified some accounts as African American and most of Lofton's accounts were African American, there is no evidence to suggest that this was a factor in his termination. There were times when Loften asked Simpson for help covering his routes and help was provided—the fact that he occasionally asked for help and did not get a response from Simpson does not lead to an inference of discrimination.

Nor does the Court find that Lofton has established that Glazer's treatment of Schuler, Rhulman, or Smith provides evidence of race-based disparate treatment. "[The test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808–09 (8th Cir. 2020) (internal citations and quotations omitted). To qualify as comparators, the individuals "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000); *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 600 (8th Cir. 2020). The violations or conduct resulting in termination need only be of "comparable seriousness" and not the "exact same offense." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (citation omitted).

The Court is not convinced by Glazer's argument that since Schuler's accounts are "on-premises" accounts (meaning accounts at restaurants and bars), unlike Lofton's off-premises accounts at stores, he could not qualify as a comparator. Yet the fact that Schuler was one of the

five DSMs who was allowed to fill a permanent sales rep position during the time that Lofton had two vacancies he had requested be filled is not sufficient to infer discrimination. Also, Lofton does not dispute Herrin's statement that all DSMs other than Scheland were generally excluded from interviewing sales rep candidates; this would include the exclusion of the three white, younger DSMs. (Doc. 7-2, p. 103).

Lofton has not established that Rhulman or Smith engaged in the same or comparable conduct that led his termination. He does not dispute Glazer's evidence that Smith received a "Final Counseling" on November 1, 2018 after a re-audit showed OOD beer at several of his accounts, that this was his first and only write-up, and that afterwards Smith dramatically improved his performance. (Doc. No. 7-2, p. 105). Glazer's has also established that Rhulman received a verbal warning in October 26, 2018 for having issues including OOD beer in his accounts. *Id.* Lofton has not produced any evidence that Rhulman or Smith was similarly situated to him in having received the number of warnings that he did for OOD beer, in having received two customer complaints in a matter of months, and having failed to meet expectations on the training for and use of the technology systems.

Even assuming Lofton had established a prima facie case, Glazer's has met its burden of establishing that it had legitimate, non-discriminatory reasons for terminating Lofton. These are outlined in the objectives of the PIP and the determination that 60 days after being put on the PIP, Lofton was found to be below expectations on three of the four objectives. (Doc. 7-2, pp.90-92, 101- 102). Lofton has failed to establish that these reasons were not the real reason he was terminated, and thus failed to meet his burden of proving pretext. Lofton relies heavily on his argument that Glazer's had a policy of selling OOD beer so he should not be punished for doing so. Glazer's vehemently disputes that this is its company policy, while also

acknowledging that it does happen. However, Lofton also acknowledged that it was his job as DSM to keep OOD beer from being on his accounts, and to train and audit his sales reps to keep OOD beer off the shelves. He has not established that the reasons given for his termination were pretext. Glazer's is entitled to summary judgment on Lofton's claims of race discrimination.

## Age Discrimination

Plaintiff also claims that he was discriminated against because of his age in violation of the ADEA. In the absence of direct evidence of age discrimination, which Plaintiff does not argue is present, the Court must again apply the McDonnell Douglas burden-shifting framework. The first stage requires a plaintiff to establish a prima facie case of age discrimination by establishing that he (1) is over 40 years old; (2) was meeting his employer's legitimate expectations, (3) suffered an adverse employment action; and that (4) there is some additional evidence that age was a factor in the employer's termination decision. Ultimately, a plaintiff must prove by a preponderance of the evidence "that age was the but-for cause of the challenged employer decision." *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021).

The Court finds that Lofton has failed to establish a prima facie case of age discrimination. He has satisfied the first and third prong, but as to the second, the evidence is undisputed that Lofton was not meeting his employer's legitimate expectations as evidenced by the fact that he had been placed on a PIP for the reasons discussed above after having received several verbal and written warnings. As to the fourth prong, Plaintiff has not submitted "some additional evidence" that age was a factor in the decision to terminate him. In his deposition, Lofton stated that he believed it was Herrin who decided to fire him because of his age, but when asked what it was about Herrin that led Lofton to believe that he didn't want older workers at Glazer's, Lofton stated "I don't have an answer for that." (Doc. 7-2, p. 34). Lofton relies on the

fact that he was the oldest DSM and Herrin would have known that.  He does not argue that Herrin never made any age-related remarks about him.  Lofton does say that, over the course of the time that he worked with him Simpson had asked him several times about his retirement plans, to which Lofton responded he had no intention of retiring any time soon.  Being asked about his retirement plans several times over the course of about twelve years does not, without more, provide evidence of age discrimination.  Most critically, Lofton admitted in his deposition that "I don't know if I was necessarily treated differently because of my age."  (Doc. No. 7-2, p. 9).

Even if the Court were to find that Lofton had established a prima facie case, Glazer's has articulated legitimate, nondiscriminatory reasons for his terminations that are "clear and reasonably specific"[4] as outlined previously.

While Plaintiff challenges in many instances that his performance was subpar as found by Glazer's, he has fallen far short of satisfying his burden of proof that the circumstances here would permit the drawing of a reasonable inference that the real reason he was terminated was because of his age.

## Conclusion

Defendant's motion for summary judgment (Doc. No. 7) is GRANTED.  A separate judgment will be entered.

IT IS SO ORDERED this 2nd day of February, 2022.

_____
UNITED STATES DISTRICT JUDGE

---

[4] *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021).